[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12347
Non-Argument Calendar
_____

D.C. Docket No. 9:17-cr-80227-DMM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEAN PASCAL,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 12, 2019)

Before WILSON, MARTIN, and HULL, Circuit Judges.

PER CURIAM:

Jean Pascal appeals his convictions and his 121-month sentence for 18 counts of attempting to bring an alien into the United States for commercial advantage or financial gain, and a single count of conspiracy to aid and assist an inadmissible alien convicted of an aggravated felony to enter the United States. Pascal argues (1) the prosecutor's closing argument featured improper remarks that deprived him of a fair trial; (2) the district court erred in enhancing his sentence for use of a special skill in the commission or concealment of his offenses; and (3) the district court's denial of his request for a downward variance resulted in a substantively unreasonable sentence. After careful review, we affirm.

**I.**

In December 2017, a grand jury returned a 23-count indictment against Pascal and four co-defendants. The indictment charged Pascal and one of his co-defendants, Hinlo Saintil, with 18 counts of attempting to bring an alien into the United States for commercial advantage or financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii), and one count of conspiracy to aid and assist an inadmissible alien convicted of an aggravated felony to enter the United States in violation of 8 U.S.C. § 1327. The indictment also included a charge of unlawfully attempted entry of a deported alien in violation of 8 U.S.C. § 1326(a) for all defendants except Pascal.

2

Saintil pled guilty to two counts of attempting to bring an alien into the United States for commercial advantage or financial gain, one count of conspiring to aid and assist an inadmissible alien convicted of an aggravated felony to enter the United States, and one count of unlawfully attempting to reenter the United States.  He was sentenced to concurrent 63-month prison terms on each count.

Pascal proceeded to trial on the nineteen counts against him.  At trial, Special Agent Joshua Woodbury of United States Immigration and Customs Enforcement testified that in June 2017, he interdicted a boat off the coast of South Florida.  Investigation revealed the boat was registered to Pascal.  Special Agent Woodbury sought and received a warrant permitting him to install a GPS tracking device on the boat.  Agents installed the device in November 2017 while the boat was docked at a Coast Guard station.  The agents then surveilled the docked boat, and saw Pascal and another person working on it, and Pascal putting fuel in it.

On November 25, 2017, Special Agent Woodbury received an alert that the vessel had travelled to the Bahamas and appeared to be returning to the United States.  Later that day, law enforcement agents interdicted the boat when it returned to United States territorial waters.  As agents approached, they saw Saintil throw items overboard.  They also observed that the boat had only one operable engine; that it was being driven by Pascal; that there were people hiding onboard; and that, although there were 24 people onboard, the vessel carried only four or

3

five life vests.  At the time of the interdiction, the seas were "very high," with waves upward of 8 to 10 feet.

Agents later discovered that none of the people onboard, except Pascal, were authorized to enter the United States.  Beyond that, three of the people onboard had already been removed from the United States, including one who had been convicted of an aggravated felony.

Three people who were onboard testified at Pascal's trial.  They identified Pascal as the captain of the boat and said they had paid him or others who they believed were associated with him to smuggle them into the United States.  Pascal, who testified in his own defense, denied any involvement in attempting to smuggle people into the United States.

During the government's closing argument, the prosecutor remarked:

> And however one feels about immigration, ladies and gentlemen, we submit to you that this is not the way that it should be done.  This puts everybody's lives in jeopardy.  What do you suppose happens when the boat goes and takes on water in the middle of the Atlantic Ocean, and there's four life jackets or eight life jackets, take your pick, and there are 24 people and the boat is sinking, and 20 of them don't know how to swim.

Pascal objected to the statements as inflammatory, but the district court overruled the objection.  The jury later convicted Pascal on all nineteen counts.

4

Pascal's presentence investigation report recommended, among other enhancements, a two-level enhancement for obstruction of justice under U.S. Sentencing Guideline § 3C1.1 and a two-level enhancement under § 3B1.3 for use of a special skill in a manner that significantly facilitated the commission or concealment of his offenses. Over Pascal's objection, the district court applied both enhancements. As support for the application of the special skill enhancement, the district court cited United States v. De La Cruz Suarez, 601 F.3d 1202 (11th Cir. 2010), in which this Court concluded a district court did not clearly err by applying the special skill enhancement where defendants piloted a Scarab boat. Id. at 1219.

Based on his total offense level of 32 and his criminal history category of 1, Pascal's advisory guideline range was 121 to 151 months. Pascal sought a downward variance, arguing his sentence should be similar to Saintil's, which was 63 months. Sentencing him more harshly, Pascal argued, would "epitomize being punished for exercising your right to go to trial." The district court denied Pascal's request, explaining its view that the co-defendants were situated differently. Namely, Saintil received a three-level offense reduction for acceptance of responsibility while Pascal received sentence enhancements for using a special skill and for obstructing justice. Finding a downward variance unwarranted, the district court sentenced Pascal to a within-Guideline range sentence of 121 months

5

on counts 1 through 18 and 120 months on count 19, all to be served concurrently. This is Pascal's appeal.

## II.

Pascal argues (1) the prosecutor's closing argument featured improper remarks that deprived him of a fair trial; (2) the district court erred in enhancing his sentence for use of a special skill in the commission or concealment of his offense; and (3) the district court erred in denying his request for a downward variance, resulting in a substantively unreasonable sentence.  Finding no reversible error, we affirm.

## A.

Pascal first contends the prosecutor made irrelevant and inflammatory closing remarks when he asked the jury to imagine what would have happened if the boat sunk in the middle of the Atlantic Ocean with too few life vests available for the people onboard.  Pascal says he was denied a fair trial because of these statements.  We conclude the prosecutor's statements did not amount to prosecutorial misconduct.

"Improper suggestions, insinuations, and assertions calculated to mislead or inflame the jury's passions are forbidden in the presentation of closing arguments." United States v. Lopez, 590 F.3d 1238, 1256 (11th Cir. 2009).  We review a claim of prosecutorial misconduct de novo because it presents a mixed question of law

6

and fact.  United States v. Eckhardt, 466 F.3d 938, 947 (11th Cir. 2006).  To establish prosecutorial misconduct, a defendant must make two showings: (1) the prosecutor's remarks were improper, and (2) the remarks prejudicially affected the defendant's substantial rights.  United States v. Wilson, 149 F.3d 1298, 1301 (11th Cir. 1998).  "A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different."  Eckhardt, 466 F.3d at 947.  "When the record contains sufficient independent evidence of guilt, any error is harmless."  Id.

Even assuming the prosecutor's closing remarks were inappropriate, Pascal has failed to demonstrate his substantial rights were prejudicially affected.  For one, the challenged comment was an isolated, minimal part of the prosecutor's closing argument.  See United States v. Crutchfield, 26 F.3d 1098, 1099 (11th Cir. 1994) ("Reversal on the basis of prosecutorial misconduct requires that the conduct be so pronounced and persistent that it permeates the entire atmosphere of the trial." (quotation marks omitted)).  Moreover, the district court instructed the jury that it "must consider only the evidence submitted in the case" and "anything the lawyers say is not evidence and isn't binding on you."  [Doc. 122 at 187]  This Court has held "[b]ecause statements and arguments of counsel are not evidence, improper statements can be rectified by the district court's instruction to the jury that only the evidence in the case can be considered."  United States v. Smith, 918

7

F.2d 1551, 1562 (11th Cir. 1990). We may properly presume the district court's instruction had that effect here. See Wilson, 149 F.3d at 1302. Also, because substantial evidence at trial supported Pascal's convictions, we cannot say that, but for the prosecutor's stray comment, the outcome of the trial likely would have been different. We therefore conclude the prosecutor's statements did not amount to reversible prosecutorial misconduct.

### B.

Pascal next argues the district court should not have applied the two-level special skill enhancement to his guideline calculation. The special skill enhancement applies if an offender used in the commission of his or her offense "a skill not possessed by members of the general public and usually requiring substantial education, training, or licensing." U.S. Sentencing Guidelines Manual § 3B1.3 cmt. n.4; De La Cruz Suarez, 601 F.3d at 1219. This Court reviews de novo a district court's legal interpretation of the term "special skill," but reviews for clear error a district court's factual finding that a defendant possesses a special skill. De La Cruz Suarez, 601 F.3d at 1219. A factual finding is clearly erroneous if we are "left with a definite and firm conviction that a mistake has been committed." Id. (quotation marks omitted).

Pascal contends no evidence submitted at trial showed he used any skills out of the ordinary in tending to the boat, its navigation, and the collection of persons

prior to boarding.  However, as the government notes, this Court has expressly rejected this argument.  In United States v. Calderon, 127 F.3d 1314 (11th Cir. 1997), a panel of this Court held "captaining a vessel on the high seas is the type of activity that requires skills not possessed by members of the general public and, therefore, requires 'special skills' within the meaning of section 3B1.3."  Id. at 1339.  This record showed Pascal captained a vessel from the United States to the Bahamas and back in high seas with waves upwards of 8 to 10 feet.  Under this Court's precedent, this constitutes a special skill under U.S. Sentencing Guidelines § 3B1.3.  Therefore, the district court did not err in applying the special skill enhancement.

## C.

Finally, Pascal argues the district court erred in denying his request for a downward variance.  He says this resulted in a substantively unreasonable sentence.  He contends he should have received a sentence similar to that of his co-defendant Saintil, who was sentenced to 63-months imprisonment.  We conclude the district court did not abuse its discretion or impose a sentence that was substantively unreasonable when it rejected Pascal's request for a downward variance.

We review the substantive reasonableness of a sentence under "a deferential abuse-of-discretion standard."  Gall v. United States, 552 U.S. 38, 41, 128 S. Ct.

586, 591 (2007). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives substantial weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation marks omitted). We will vacate a sentence as substantively unreasonable only if "we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the [18 U.S.C.] § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." Id. at 1190 (quotation marks omitted).

The district court did not abuse its discretion in imposing Pascal's sentence. The court reasonably decided that the seriousness of Pascal's offenses and the danger presented to the people he attempted to smuggle into the United States justified a sentence of 121-months imprisonment. This sentence was at the low end of Pascal's Guideline range. Beyond that, the district court reasonably decided that the disparity between Pascal's 121-month sentence and Saintil's 63-month sentence was warranted because the co-defendants were not similarly situated. As the district court explained, Saintil's sentence was reduced due to his acceptance of responsibility, while Pascal's was enhanced because he obstructed justice and used

10

special skills in the commission of his crimes.  On this record, Pascal's sentence is substantively reasonable.

**AFFIRMED.**